Good morning. Good morning. Good morning, your honors. May it please the court. Eric Frazier on behalf of the petitioner. I'd like to save three minutes of my time for rebuttal. And as the court knows, I've ceded five minutes of my time to counsel for the amici. Let me just ask, just so we can go to the heart of what remains, I understand that the government has conceded that based on the Enriquez-Rivas v. Holder case and the Madrigal v. Holder case, that we are to remand on withholding of removal in CAT. Is that your understanding as well? Yes. The only point on which we disagree is the scope of the remand. We think the court should remand on those two claims to reconsider all of the evidence as we explained in our briefs, not just those two cases. Okay. All right. But basically those two claims, the nature of the review is different, but you don't dispute that, right? Right. We agree that the case should be remanded on those two claims. You're going to focus on the other points. Exactly. Okay. So I'd like to focus on asylum. We are here to harmonize, as best we can, the asylum statute with the reinstatement bar. The text, structure, history, and purpose all indicate that the reinstatement bar should not displace the whole asylum regime. The reinstatement bar that Congress passed was too broad. Nobody disputes that because the agency itself carved out withholding and CAT. Those two carve-outs solved some of the problems, but not all of does not actually mean any relief. And the better view is that the reinstatement bar does not apply to any refugee issue, whether it's raised and withholding, CAT, or asylum. There is no principled way that withstands scrutiny to differentiate withholding and CAT from asylum as it relates to the reinstatement bar. We recognize that this is a difficult issue because of the seemingly broad nature of both statutes. By contrast, the government asks the court to don horse blinders and focus only on one of the two statutes. We think to do justice to the whole INA, the court needs to look at both statutes and reconcile them as best it can. The vast majority of individuals in reinstatement status do not seek asylum. As a result, we can still honor the broad purposes of the reinstatement bar. So take me through the language, the plain language of the reinstatement bar that says the alien is not eligible and may not apply for any relief under this chapter. Right. Any relief at all under this chapter, can't do it. Right. Well, we know already that those words do not mean what they say. How do you know that? Because the agency itself and this court and other courts have repeatedly said, notwithstanding the seemingly broad nature of that statute, notwithstanding the broad text of the statute, an individual is entitled to withholding, CAT, U visa, other forms of relief. So we know that Congress passed a statute that was just too broad. So the question is, you have two statutes. The government argues that the lease withholding and CAT are non-discretionary. U visa is discretionary. So I don't know what their explanation for that is. But does that, what's your response to the distinction between the non-discretionary and the discretionary? Right. Well, that distinction does not work because it does not matter whether the relief is discretionary. The right to seek the relief is not discretionary. And what's being withheld in this case is not the relief. We haven't even gotten there yet. What's being withheld is the right to seek relief. This was not an exercise of discretion. This is the government saying there's an absolute bar to applying for asylum relief. So we know the statute cannot mean what it says. And the courts have held over and over again that notwithstanding that broad bar, other forms of relief are available, including others in the same chapter. So, OK, it says any relief under this chapter. And you're saying, well, that's that's too that's too broad. And so we can because you know that there's carve outs. And so therefore the carve out should also include asylum. Right. Right. Well, then what doesn't it include? So I don't have an example. Then open it up completely and then vitiate any sort of limitation. No, it certainly does not. And again, I'd like to remind the court that very few people in reinstatement status actually seek asylum claims. But it does not it would it would still include, for example, cancellation of removal, voluntary departure, certain forms of waivers. So all of these forms of relief that are not under the humanitarian asylum refugee context would still be available or would still be barred by the by the reinstatement bar. So it's certainly not not the case that ruling in our favor would would eliminate the bar at all. And that makes sense. But the agencies already enacted regulation that limits referral in reinstatement cases to withholding and cat. What sort of deference do we need to pay to that? Well, I'm glad you asked that, Your Honor. But first of all, both parties think that this case should be resolved on the statutes, not the rules. This court issued an order calling for the government's position on those issues. The very first page of its brief said that this case should be resolved on the statutes. Those rules do not should not be given deference in part because the government will not answer the simple question of whether this rule was actually intended to represent the agency's resolution to this question. The rule it's the text of the rule itself does not bar asylum. The text of the rule itself creates a procedure that can be used for cat and it can be used for withholding. But the text of the rule itself does not bar asylum relief. The government also waived any reliance on deference by not raising it in the answering brief, even though we fully briefed it. I think we spent ten ten plus pages on it in the opening brief. You also have several problems with with the Administrative Procedure Act, the failure to follow notice and comment rulemaking. And we understand there are other rules on this issue. And none of these rules did the government set out to answer the specific statutory question that we have today. It's your position that both you and the government are saying, forget about you know, forget about Chevron here. Just look at the statute. It's you say it's unambiguous, I gather. And being unambiguous, we should consider it your way. Is that what you're saying? Well, we recognize that both statutes are broad and both statutes have have a broad and firm wording. But the reinstatement statute has never been interpreted to be ironclad, even though the wording is clear. I hear what you're saying, but you're saying we just look at the statute and we apply the normal ground rules, if you will, for how one construes a statute. Right. So after you go through the normal tools of statutory interpretation, we believe that the court will find that asylum relief should be available in reinstatement status. And once you apply those rules, then the congressional intent is clear. There are three circuits who've already rejected your reading. What weight do we give to that? Your honors, those those three circuits, the Second Circuit, the Fifth Circuit, and just as of Monday, the Eleventh Circuit. But if you look closely at those opinions, those opinions do not really grapple with the issue here. They they do not make a real attempt to reconcile the reconcile or harmonize the two statutes. Well, they look at the plain language of the statute, at least of the reinstatement statute. That's right. They look at the plain language of the reinstatement statute, but not the asylum statute, particularly the Second Circuit and the Eleventh Circuit do not really grapple with the plain language of the asylum statute. None of those three courts applied any standard interpretive canons. They did not make any effort to resolve any ambiguities in favor of the alien. There is no way to reconcile the holdings of those three courts, for example, with the provision in the asylum statutes for successive applications. And there is no real legislative history analysis in those three opinions. So we respect cases, not a successive. Right. This case is not a case of a successive application. But that that statutory provision illustrates and is an example of the conflict between the statutes here and the problem that the government's position creates. And Fifth Circuit did analogize to the withholding of, I mean, the adjustment of status and took comfort from the fact that the Supreme Court has upheld the reinstatement bar as applied to the adjustment of status. Right. But but there is not the same kind of broad statutory guarantee to that form of relief as there is for asylum. The asylum statute says any alien physically present in the United States, regardless of status, that includes unlawful status, such as somebody with an order of reinstatement. This is no indication of how this panel might consider. But as you know, certain members of Supreme Court, one of whom has recently left us, was strongly opposed to relying upon legislative history. Were we to consider legislative history in our objective review of the statute, what specific history would you refer us to? Well, I certainly take the point about Justice Scalia's position on legislative history. This is the type of legislative history that we are presenting to the court is not the type of isolated floor statement or committee report that that he abhorred so much. This is looking at the way in which Congress enacted these statutes. What specifically, though? What do you what are you referring to? You say it's not a it's not a committee report. It's not some members comment. What are you referring to? So the same it's the same enactment by the same Congress. And it did the following things. Right. It the entitlement to apply for asylum. It reformed the scheme for asylum claims, including adding new exceptions to that statute. Those exceptions had cross references to other statutes. So the Congress certainly knew when it was creating exceptions to the asylum statute, how to cross reference other applicable. So what you're saying is it the fact that the statute was thinking on what they could have possibly meant by this bar. Is that right? Well, what I'm what I'm suggesting is that because it's the same Congress enacting the same statute, that it apparently saw no inconsistency here. And that if you look at what it did and what it knew, what the Congress knew how to do in this statute, I think the best thing that the best intent that we can find in that in that enactment is that it intended to add new exceptions for asylum, but it did so in the asylum statute. With respect counsel, I don't look at that as legislative history. That's your construction of what Congress intended to do. But it's not what a member of Congress or a committee or anybody said. That's you're talking about something quite different than what I understand to be legislative history. Am I missing something? No, maybe it's just the different labels we apply to it. I'm looking at the history of the statutes. And I'm saying before this enactment in 1996, the statutes looked one way. After the enactment, they looked a history. Where do we get what the Congress intended? Just by reading the other sections of the statute? Yes. Okay. Yes. You're going to have your co-counsel argue or are you going to save some time? What are you doing? I'm not sure how much time was on the clock to begin with. I'd like, I intended to save some time. And you have 15 minutes and now you've got less than two. Okay, I'm sorry. I will. I will sit down. Thank you. Your Honor's Karen's awake on behalf of a Mickey. The government's position in this case would require this court to draw a false dichotomy between relief and protection that does not exist in the statute or the regulations. Their interpretation requires this court to conclude that asylum is relief and not protection when the plain meaning is that asylum, just like withholding and cat, is both relief and protection. What about this language of the statute itself that was cited by Judge Wynn? The any relief language? Yeah. Sure, Your Honor. The any relief language in 1231A5 certainly seems broad on its face, but our position is that you can't take that language just at face value because for a few reasons. First, the word relief is not defined anywhere in the INA and there's no basis in which in the INA or in the regulations to conclude that withholding and cat aren't relief. Secondly, the courts have consistently referred to withholding and cat as forms of relief, just like withholding and cat are all three consistently referred to as both protection and relief. And third, the reinstatement statute says no bar on any relief. It doesn't say any relief except mandatory relief. So it doesn't, the government's position also asks the court to read in an exception for the forms of relief that are mandatory. You know, Your Honors, our position is also supported by other pieces of 1158, the statutory language in 1158. So as Mr. Fraser was saying, you can't read the statutes in a vacuum. 1158 contains a number of clues that indicate that asylum, that 1158 should be the only determinant on who should be able to seek asylum. First of all, asylum is temporary. The asylum statute is not a right to remain in the United States permanently, and this ability to terminate asylum status makes it much more like withholding and cat than the government would have you believe. Second, there's also, there are also cross-references in 1158. So, which indicates that the government, that Congress, if it had meant for Section 1231A5 to be a bar to asylum, it knew how to do so using a cross-reference. There's no cross-reference to 1231A5. We can give you another half a minute, but if you will, please wind it up. Sure. I also want to, I also, because Mr., Judge Fischer asked about the Supreme Court and the Fifth Circuit's decision, I want to make sure that the pieces of this relating to the Refugee Act and the Supreme Court's decision in Cardozo-Fonseca are clear. The Fifth Circuit relied on this decision in Cardozo-Fonseca to conclude that international treaty obligations were satisfied in this case, but that decision by the Supreme Court did not actually address the refugee, the obligations that we have for refugees in this case, including things like the rights, the rights, the various rights that are available to asylees but not refugees. Sorry we don't have more time, but we appreciate your argument very much. Thank you. We'll hear now from the government. May it please the Court, Your Honors. Tim Remnitz on behalf of the United States Attorney General. Loretta E. Lynch. Petitioner claims that asylum is available in reinstatement provision, in reinstatement proceedings. Now what they're trying to argue is that asylum and withholding, one is, they're both relief or they're both protection, but I can pretty easily explain the difference between relief and protection for the Court. So when this reinstatement provision bars all relief, that is referring to these codifications of adjustment of status, cancellation of removal, asylum, voluntary departure. Those are the forms of relief that are very limited under the INA. Now there's forms of protection, withholding removal and cat protection. You'll notice that withholding removal is under 1231. That is a statute that refers to execution of removal order has been entered, but in this case there's something that prevents execution of that removal order because there's a clear probability of persecution in the country of removal. That removal order stays in place and in fact can be executed to a separate country. It is simply a restriction on removing that individual to a specific country. On the other hand, there's relief in the form of asylum and all of its attendant benefits, just like cancellation removal, just like adjustment of status, where once they obtain relief in removal proceedings, that does away with the removal order. The removal order goes away and they get relief and they're on a pathway to lawful permanent residency and eventually citizenship. They can also petition for relatives to come in and also importantly all three of those forms of relief are discretionary. They don't have to be granted by the Attorney General. Cancellation, adjustment and asylum are discretionary. They all lead to lawful permanent residency and they all get rid of this removal order. That removal order cannot be reinstated again. Versus protection, holding removal and cap protection. It's also clear that Congress envisioned a difference between relief and protection. When you look at 8 U.S.C. 1229 AC4, that's the burden of proof statute that aliens have to or instructs aliens or non-citizens what they have to do to establish eligibility for relief. In that statute, there's the exact phrase, the burden of proof is on the non-citizen for established eligibility for relief or protection. So Congress clearly envisioned some difference. And that's what the difference is and the petitioner referenced Cardozo-Francesco, the Supreme Court case from 1987. And it lays out this difference between, well specifically, why asylum is relief and why withholding of removal is protection. This is because of the protocol, 1968 protocol, which started with the 1951 convention. And we have as a signatory nation to that convention, we have Articles 33 and 34, which are at issue in Cardozo-Francesco. Article 33, as the court explained, corresponds to withholding of removal because that imposes Article 33, an obligation on the United States as a signatory nation. They use the word non-refoulement, which simply means we can't return that person. We're under an obligation not to return that individual to a country where they're going to experience persecution. Versus Article 34, which the Supreme Court explained corresponds to what Congress codified as asylum in 1980 with a statute, 1158. Article 34, as the Supreme Court explained, is a precatory hope. And precatory meaning wish or desire. They hope the signatory nation will find a way to permanently resettle that refugee. But as the Supreme Court explained, it imposed no obligation on that signatory nation. It just hoped that if they were a refugee, the only obligation is to not return that person. But perhaps that country can find a way to permanently admit that individual and to perhaps grant a broad form of relief. But it's not protection. It was a pathway to admission and permanent resettlement that Congress elected in their discretion to create. And that's the difference between relief and protection. So asylum is just like cancellation, removal, adjustment of status. It is this form of relief. And Congress in the INA has also described asylum as relief. You can look at the discretionary review bar, 1252A2B. Where it talks about all these different forms of relief that have discretionary determinations involved in them that this Court excluded from reviewing. At the end of that paragraph, however, it states, other than the granting of relief under Section 1158. Counsel, let me just ask you this. This is all interesting, but your opposition indicates that the government and the proponents here believe that this matter should be resolved on the plain language of the statute without reference to the regulations. What's the government's position on that? The government's position is it should be resolved in plain language. But there is a regulation that the Court owes Chevron deference to because that is the agency's authoritative interpretation on the reinstatement provision. Was that regulation promulgated pursuant to the APA? It was not promulgated pursuant to a formal rulemaking. It was informal rulemaking. What deference do we give to that? Our deference? What are we talking about? I think our deference is when the regulation is ambiguous. Right. Well, I suppose so. And in this case, it would be Chevron deference because this is the authoritative interpretation of the statute that says no relief is available except for withholding removal and cap protection. Do we give Chevron deference in a situation where a regulation has not gone through the formal rulemaking procedure? I'm not aware of any case law on that. But when it's a regulation promulgated by the agency, that warrants Chevron deference. That is their interpretation of perhaps an ambiguous language in the reinstatement statute. But the regulation also kind of assumes that language is not ambiguous. It prescribes categorically all relief. And therefore, it does not provide any relief in the regulation. It only provides protection. So from your perspective, the statute is not ambiguous. Correct. It's clear. But if we find it so, we should look at the regulation and give it Chevron deference irrespective of the fact that it wasn't officially promulgated pursuant to the APA. Correct. So I believe we discussed whether it's relief or protection. It's clearly relief. 1231A5 categorically bars all relief. And that should end this argument, essentially. Did you address the U visa? You're arguing discretionary versus nondiscretionary as part of, at least in your briefs. U visas are discretionary. So if withholding and CAD are nondiscretionary, as I think you argued, how does the U visa come into play? U visa is not a form of relief, I would argue. It's an immigrant visa. They can obtain, but it's also temporary. It can ultimately lead to relief. They can file for adjustment of status based on that visa petition. And there you get to one of your few limited forms of relief under the INA, adjustment of status. So it in itself is simply a visa that allows someone to reside for a temporary period. They can seek to renew a U visa. But it in itself is not relief as you'd have it under these statutes. It's a temporary thing. Whereas you look at adjustment of status, cancel removal and asylum, they lead to lawful permanent residency. And you are firmly resettled in the United States at that point. U visa does not do that on its own. So to accept your argument, relief is tantamount to a term of art under the INA then? Yes. For plain language to work. Because if you think of relief as in the common sensical, you know, sense of the word, then relief is much broader than that. Broader in the sense that it includes perhaps CAD protection and withholding removal? Right. You're using relief as a term of art. That it covers adjustment of status. It covers asylum. It covers cancellation of removal. It doesn't cover U visas. It doesn't cover withholding of removal. Right? So you're using it as a term of art. Yes. And as I noted, Congress has employed that same distinction in the burden of proof statute. It recognizes there is a difference between relief and protection. And I think when you, as we stated, relief has to lead to these benefits. Where the removal order is taken away. It leads to lawful permanent residency. And it's also discretionary. It doesn't have to be granted. And there's also another categorical bar that's just like this. 1228B for aggravated felon administrative removal. That has the exact same categorical bar in all relief. It's also important to note that when Congress wants to take anything back from the reinstatement statute. When it wants to create an exception to this bar in relief. It knows how to do that. As this court pointed out in Padilla v. Ashcroft, which is the 2003 case. It looked at the Life Act, which is a 2000 amendment. But in this case, it was about special cancellation of adjustment of status pursuant to the Haitian Refugee Act and NARCARA. And in that Life Act of 2000, Congress specifically stated that these two forms of relief. Will be exempted from the reinstatement prescription on all relief. So when Congress wants to take back from that clear categorical bar. And knows how to do so. As far as any conflict between 1158 and 1231A5. There's simply no conflict. 1158 states any relief or any alien can apply for that relief. Just like cancellation removal. Just like adjustment of status. And then lays out a bunch of qualifiers and exceptions to that. And reinstatement is another exception to that. It's an exception to all those categories of relief in fact. And it states that anyone who in the specific subclass of non-citizens. Who have been through the process. They've been through removal proceedings. They've had their opportunity to seek relief. If they've been afforded that process. They have been physically removed. And then they choose to legally come back into the United States. Then they are simply barred from these forms of relief. Is there any other questions from the panel? I don't think so. Let me ask my colleagues. These folks on the other side have used up their time. Do you have any questions? We have them back for rebuttal. I'd like to hear what the response is. Okay. Very good. Thank you very much for the government. We'll give you a couple of minutes to do rebuttal. Thank you for the additional time, Your Honors. I didn't realize that I was eating into the amici's time. She's going to work the time here. Give them two minutes. So I'd like to first address the relief and protection distinction. The term relief is not defined in the statute. It's not defined in the INA. And the courts use the terms relief and protection interchangeably. Moreover, even if that distinction holds, it does not solve the issue with the statutory text in the asylum statute. And if that distinction made sense, then the courts and the agency would not repeatedly acknowledge that the reinstatement bar is not as broad as it seems. I'd like to briefly address Chevron deference. First of all, the agency has taken a heads-I-win, tails-you-lose position. That's not permitted under the law. It says, first, the statute is clear, but if it's not, then we get deference. That doesn't work because the Gila River case from this court says that an agency decision based on the incorrect view that the statute is clear does not get deference. So from your perspective, pursuant to Gila River, either the statute is clear, everybody agrees on that, or that's the end of the story. But you're saying we don't even get to a regulation under any circumstance if we just look at the statute. Either the statute is clear or the court needs to answer the statutory interpretation question. So we don't look at the regulation from your perspective. Right, particularly because the text of the regulation does not actually address asylum. And if you look at the background in the rulemaking for the rule, it doesn't purport to address this issue. It assumes the conclusion. And the Gila River case says, without an explanation of the agency's reasons, it is impossible to know whether the agency employed its expertise or simply picked a permissible interpretation out of a hat. Does that doubly apply when the regulation was promulgated without compliance with the APA? Yes, I certainly think so. And I'd like to briefly address the notion that reinstatement is a further exception to the asylum statute. The asylum statute has a list of exceptions as cross-references to other sections. And if we have two possibilities, one in which reinstatement is an exception to an asylum and the other in which asylum is an exception to reinstatement, with all due respect to the government, the humanitarian purpose of the asylum statute should trump the processing efficiency of the reinstatement bar. You use that term as a non-term of art, I assume. Which term? Trump. Yes, I certainly do. And, again, because asylum has no judicially created or agency-created exceptions and the reinstatement bar does, we submit that asylum is an exception to the reinstatement bar. We ask the Court to grant the petition for review. We thank all counsel. You're obviously very, very capable lawyers. You know your stuff. This is difficult. And we thank you for your help. Thank you. Very good. The case is argued as submitted. Thank you.
judges: Fisher, M. Smith, Nguyen